*In re* ESTATE OF ROBERT COLEMAN, Deceased.—(FRANCES E. COLEMAN, Adm'r of the Estate of Robert Coleman, Petitioner-Appellee, *v.* CAROLYN B. COLEMAN *et al.*, Respondents-Appellants.)

Second District   No. 78-299

Opinion filed October 11, 1979.

Paul J. Collins, of Waukegan, for appellants.

Richard B. Kuseski, of Wasneski, Kuseski, Flanigan & Dixon, of Waukegan, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

Respondents, Carolyn B. Coleman and Adelaide W. Hicks, appeal from a judgment of the Circuit Court of Lake County requiring them to convey all interest in certain real property to petitioner, Frances E. Coleman, administrator of the estate of Robert Coleman, deceased.

Robert and Carolyn Coleman were divorced in 1974. Under the terms of their property settlement agreement, which was incorporated into the divorce decree, Robert was to make a lump sum payment of $10,000 to Carolyn within 30 days and annual $500 payments thereafter for a period of 3 years. Alternately, Robert could use a "special lending arrangement" they had agreed upon whereby he would pay Carolyn $15,000, with interest, over a 15-year period to be secured by a promissory note and a second mortgage on the former marital home. Upon receipt of either the $10,000 lump-sum payment or the mortgage and note, Carolyn agreed to thereupon transfer to Robert by quitclaim deed all her interest in the marital home which was held by the parties in joint tenancy.

Robert did not thereafter expressly choose to exercise either option, but in September 1975 he did give to Carolyn a promissory note for $12,000, the agreed balance due to her under the decree, which he agreed to pay with interest in monthly installments of $94.90. Robert made the payments on that note until his death in February 1977. His administrator then filed a petition for citation to collect assets pursuant to section 16-1 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 16—1) seeking a determination that the former marital real estate was an asset of decedent's estate. The trial court found that the intent of the parties was that Robert would receive the real estate and Carolyn would receive the agreed sum of money for her equity therein. The court ruled that Carolyn continued to hold title to the former marital home as a joint tenant solely as security for the payment of the money due her under the divorce decree and ordered her to quitclaim her interest to petitioner. Both of the respondents have deposited quitclaim deeds with the clerk of the court

and the administrator has so deposited the $12,235.55 balance due on the note.

Carolyn contends that Robert's compliance with the terms of the divorce decree was a condition precedent to her obligation to quitclaim the property to him. As he failed to fully perform during his lifetime, she argues that she holds the property as the surviving joint tenant free of the claim of Robert's estate.

The primary issue to be resolved in this case is whether the decree for divorce and property settlement agreement will be given effect where the subject property has continued to be held by the parties in joint tenancy until Robert's death.

■■ When an agreement by divorcing spouses concerning property rights is approved by the court and incorporated into the divorce decree, it becomes merged in the decree and the rights of the parties thereafter rest upon the decree. (*Brandel v. Brandel* (1966), 69 Ill. App. 2d 264, 216 N.E.2d 21.) In interpreting such an agreement, the courts apply the normal rules for construction of contracts. (*In re Estate of Kite* (1974), 19 Ill. App. 3d 932, 312 N.E.2d 366.) Accordingly, the object in so doing is to give effect to the apparent intent of the court (*Pope v. Pope* (1972), 7 Ill. App. 3d 935, 289 N.E.2d 9) and the intention of the parties (*In re Estate of Kite*). Where no ambiguity exists on the face of the decree, the intent of the parties will be determined only from the language of the instrument itself. *Halper v. Halper* (1978), 57 Ill. App. 3d 588, 373 N.E.2d 598.

The key provisions of the decree and property settlement which we consider read as follows:

> "(c) That the husband shall pay unto the wife the total sum of TEN THOUSAND ($10,000.00) DOLLARS in a lump sum within thirty (30) days of the entry of the Divorce Decree herein, as and for the wife's equity and payments of loans, improvements, and any and all special equities concerned with the premises
>
>     * * *
>
> (e) The wife agrees to transfer all her right, title and interest in the aforesaid described premises on receipt of the $10,000.00 lump sum payment, and shall issue a Quit Claim Deed transferring all right, title and interest that she may have to the husband herein * * * ."

Paragraph (f) then outlined the alternative "special lending arrangement," whereby Carolyn would receive $15,000 "as and for her one half interest in the aforesaid premises * * * ," with a mortgage and note to be executed by Robert.

■■ We find no error in the trial court's determination of the intent of the parties in their property settlement agreement. It seems clear that they

intended Robert would buy out Carolyn's interest in the real estate in question through one of the alternate methods therein described. Although Carolyn's former attorney testified that Robert expected he and Carolyn would be getting together again, we do not consider that the evidence presented was sufficient to support the conclusion the parties did not intend that the property settlement agreement would sever the joint tenancy.

■■ A joint tenancy will be severed when one or more of the four unities of interest, title, time or possession is destroyed. (*Jackson v. O'Connell* (1961), 23 Ill. 2d 52, 177 N.E.2d 194.) An agreement to hold as tenants in common will sever an existing joint tenancy and may be inferred from the parties' course of dealing concerning the property. (*Thomas v. Johnson* (1973), 12 Ill. App. 3d 302, 297 N.E.2d 712; *Duncan v. Suhy* (1941), 378 Ill. 104, 37 N.E.2d 826.) We find in this case a severance of the joint tenancy was intended by the property settlement which provided for Carolyn to convey to Robert her interest in the property on the stated terms. The subsequent conduct of the parties is consistent with this conclusion; they were carrying out the "special lending arrangement" agreed upon at the time of Robert's death.

■■ The property settlement agreement operated, in this case, to sever the unity of interest between the parties, and the intervening death of Robert before he fully discharged his obligation did not defeat the severance. (See *Thomas v. Johnson* (1973), 12 Ill. App. 3d 302, 297 N.E.2d 712.) While it is true that a divorce decree alone does not effect a severance of a joint tenancy (*In re Estate of Woodshank* (1975), 27 Ill. App. 3d 444, 325 N.E.2d 686), Carolyn's reliance on *Woodshank* is misplaced, for in that case there were no explicit provisions for conveyance of one spouse's interest to the other as in the instant case.

The divorce decree in this case incorporated the property settlement agreement, which they had created of their own volition, and each of them have been entitled to its enforcement at all times since the entry of the decree. (See *Cunningham v. Lawrence* (1959), 16 Ill. 2d 201, 157 N.E.2d 50; see also *Vinci v. Vinci* (1970), 131 Ill. App. 2d 496, 266 N.E.2d 379.) Thus the property settlement agreement defined the nature and extent of the rights and liabilities of the parties with respect to the marital real estate, and the trial court was required to direct performance of those obligations under the decree so as to fully execute its terms.

We therefore agree with the judgment of the trial court that it was the intent of the parties that the joint tenancy be severed and that Carolyn retain her interest in the property solely as security for performance by Robert of his obligation. As petitioner, on behalf of Robert's estate, has tendered full payment by depositing with the clerk of the trial court the

balance due on the note, Carolyn must convey the property to the estate as agreed.

We note that respondent Adelaide Hicks, who is Carolyn's mother, had also held title to the subject property, apparently as a nominal party and at the request of Robert and Carolyn. The trial court found she had no interest in it and included her in its order to quitclaim all interest to petitioner. Adelaide Hicks originally joined Carolyn in this appeal but now desires to dismiss her appeal. As no brief was filed and no argument made on her behalf, any grounds for appeal Adelaide Hicks may have had are thereby waived and will not be considered by this court, in accordance with Supreme Court Rule 341(e)(7) (Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7)).

The order of the trial court is therefore affirmed in all respects.

Affirmed.

GUILD, P. J., and WOODWARD, J., concur.